# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

**MICHAEL ALLAN THOMAS,**

      Plaintiff,

    v.

**COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,**

      Defendant.

Civ. No. 1:14-CV-00987-CL

**ORDER**

---

MARK D. CLARKE, Magistrate Judge.

Plaintiff Michael Allan Thomas ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability benefits. This court has jurisdiction under 42 U.S.C. § 405(g). For the reason set forth below, the decision is **reversed and remanded**.

## BACKGROUND

Plaintiff was born in 1971. Tr. 28. He has a high school education. Tr. 28. He was enrolled in special education courses throughout his schooling. Tr. 817. Plaintiff began working on his family's farm at an early age. Tr. 817. He went on to work as a truck driver and, later, as an equipment operator. Tr. 817.

On August 13, 2009, Plaintiff fell while at work, landing on his right side and back. Tr. 356. He lost consciousness temporarily and suffered a mild to moderate concussion. Tr. 825. Thereafter, he began to complain of severe headaches, neck pain, back pain, blurred vision, tingling, dizziness, memory loss, cognitive problems, and nausea. Tr. 236, 393.

Over a year later, in October 2010, Plaintiff felt a "pop" in his head which coincided with bleeding from his nose and fluids leaking from his ears. Tr. 805. Immediately after the "pop," Plaintiff felt as though his mood control, memory, personality, and handwriting returned "back to normal." Tr. 805. Medical reports confirm that Plaintiff substantially improved in his cognitive and emotional functioning after the "strange incident." Tr. 71, 811. However, Plaintiff continued to struggle with anxiety, irritability, depression, chronic pain, cognitive inefficiency, fatigue, syncopal episodes, weakness, poor dexterity, and impaired motor abilities.

Plaintiff first filed for Title II benefits on January 4, 2010, alleging disability beginning August 12, 2009. Tr. 13. The Commissioner denied the application initially and on reconsideration. Tr. 13. On March 2, 2011, Plaintiff filed a second application, again alleging disability since August 12, 2009. Tr. 13. On May 26, 2011, the Commissioner reopened Plaintiff's prior application and awarded him benefits for a closed period of mental disability from August 12, 2009 to April 22, 2011. Tr. 13. On July 26, 2011, Plaintiff submitted a request for reconsideration of the closed period determination. The Commissioner denied the request and found Plaintiff not disabled for the entire period from August 12, 2009 through the date of the determination. Tr. 13. At Plaintiff's request, a hearing was held before Administrative Law Judge ("ALJ") Robert Kingsley on November 7, 2012. Tr. 12-13. Plaintiff appeared and testified. Tr. 13. He was represented by counsel. Tr. 13. On March 11, 2013, the ALJ issued a decision

finding Plaintiff not disabled. Tr. 10. The Appeals Council denied Plaintiff's request for review,

rendering the ALJ's denial the Commissioner's final decision. Tr. 1. This appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially

dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks

the following series of questions:

1.      Is the claimant performing "substantial gainful activity?" 20 C.F.R.
        §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving
        significant mental or physical duties done or intended to be done for pay
        or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing
        such work, she is not disabled within the meaning of the Act. 20 C.F.R.
        §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing
        substantial gainful activity, the analysis proceeds to step two.

2.      Is the claimant's impairment "severe" under the Commissioner's
        regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless
        expected to result in death, an impairment is "severe" if it significantly
        limits the claimant's physical or mental ability to do basic work activities.
        20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted
        or must be expected to last for a continuous period of at least 12 months.
        20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe
        impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii);
        416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis
        proceeds to step three.

3.      Does the claimant's severe impairment "meet or equal" one or more of the
        impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,
        then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii);
        416.920(a)(4)(iii). If the impairment does not meet or equal one or more of

the listed impairments, the analysis proceeds beyond step three. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel,* 180 F.3d 1094, 1100 (9th Cir. 1999); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

/ / /

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date of August 12, 2009. Tr. 15. At step two, the ALJ found Plaintiff had the following severe impairments: status-post traumatic brain injury with poor balance, seizures, and headaches; adjustment disorder; somatoform disorder; learning disorder; anxiety disorder; affective disorder; and degenerative disc disease. Tr. 15. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled any listed impairments. Tr. 16. Next, the ALJ assessed Plaintiff's residual functional capacity ("RFC"). He determined Plaintiff could perform light work subject to the following limitations: he cannot climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs; he can occasionally balance, stoop, kneel, crouch, and crawl, but must avoid concentrated exposure to wetness, noise, vibration, and even moderate exposure to hazards like machinery and heights; he can perform simple routine tasks; he can tolerate only occasional and superficial interaction with co-workers and the general public. Tr. 18. At step four, the ALJ found Plaintiff was not capable of performing his past relevant work as an equipment operator or truck driver. Tr. 28. However, considering Plaintiff's age, education, experience, and RFC, the ALJ determined Plaintiff was capable of performing jobs that exist in significant numbers in the national economy, including housekeeper/cleaner, small products assembler, and agricultural sorter. Tr. 28-29. Therefore, the ALJ concluded Plaintiff was not disabled, as defined by the Social Security Act, through the date of his decision. Tr. 29.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see*

Page 5 – ORDER

*also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r,* 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this court may not substitute its judgment for that of the Commissioner. *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)).

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## DISCUSSION

Plaintiff asserts the ALJ erred by: (1) finding Plaintiff's hearing loss and chronic pain disorder were not severe impairments, (2) discrediting Plaintiff's testimony, (3) rejecting the opinions of medical providers who treated and examined Plaintiff, (4) failing to account for all

medical opinions and impairments, including chronic pain, in Plaintiff's RFC, (5) posing hypotheticals to the vocational expert that did not incorporate all of Plaintiff's severe impairments, and (6) failing to evaluate whether Plaintiff was entitled to a closed period of disability. The Court considers each alleged error in turn.

## I.   The ALJ Properly Identified Plaintiff's Severe Impairments.

Plaintiff contends the ALJ failed to identify Plaintiff's hearing loss and chronic pain disorder as severe impairments at step two of the sequential process. A severe impairment is one that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" are the "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b) Pursuant to the Commissioner's regulations, an ALJ can classify a claimant's impairment as "non-severe" only if evidence establishes it as a "slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). Thus, to move beyond step two, a claimant must establish that his impairment creates more than a minimal effect on his ability to do basic work activities. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1164-65 (9th Cir. 2008) (the ALJ did not error in concluding the plaintiff's carpal tunnel syndrome was not severe because the record did not establish any work-related limitations resulting from it).

The medical record does not establish how, if at all, Plaintiff's hearing loss impacted his ability to work. Plaintiff's testimony indicates the effects of the impairment are minimal. Plaintiff said that he had "just a little bit" of hearing loss in his left ear and, overall, he could "hear pretty good." Tr. 60-61. He represented that he had no difficulty tracking the ALJ. Tr. 60. In light of these affirmative statements, the ALJ reasonably concluded Plaintiff's hearing loss no more than minimally affected his functioning and thus was not a severe impairment. Tr. 16.

Despite finding the impairment non-severe, the ALJ explicitly considered its effect in combination with Plaintiff's severe impairments as required by 42 U.S.C. § 423(d)(2)(b) ("[T]he Commissioner of Social Security shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity."). Tr. 16.

The ALJ did not discuss Plaintiff's chronic pain disorder in his step two analysis. However, the ALJ identified somatoform disorder as a severe impairment. Tr. 15. Defendant asserts, and Plaintiff does not refute, that at the time of the decision, the American Psychiatric Association classified pain disorder as a somatoform disorder. Def.'s Br., at 9. Therefore, although the ALJ did not mention Plaintiff's chronic pain by name, it appears that he properly considered the condition. Indeed, he classified it as severe. The Court finds no error in the ALJ's step two analysis.

## II.    The ALJ Validly Discounted Plaintiff's Testimony.

Plaintiff argues the ALJ improperly discredited his testimony. When gauging a claimant's credibility, an ALJ must engage in a two-step process. 20 C.F.R. §§ 404.1529, 416.929. First, the ALJ must determine whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Second, if such evidence exists, unless the ALJ makes a finding of malingering, the ALJ must give clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Id.* at 1284. Clear and convincing reasons for rejecting a claimant's testimony "include conflicting medical evidence[;] effective medical treatment[;] medical noncompliance[;] inconsistencies in the claimant's testimony or between her testimony and her conduct[;] daily activities inconsistent with the

alleged symptoms[;] and testimony from physicians and third parties about the nature, severity[,] and effect of the symptoms complained of." *Bowers v. Astrue,* No. 6:11–cv–583–SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012). An ALJ may also consider (1) "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid[,]" and (2) "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment[.]" *Smolen,* 80 F.3d at 1284. A general assertion that the Plaintiff is not credible is insufficient. The ALJ must identify what testimony is not credible and what evidence undermines the claimant's allegations. *Dodrill v. Shalala,* 12 F.3d 915, 918 (9th Cir. 1993). If the ALJ's credibility finding is supported by substantial evidence in the record, this Court may not engage in second-guessing. *Thomas v. Barnhart,* 278 F.3d 947, 959 (9th Cir. 2002).

Here, the ALJ found Plaintiff's impairments could reasonably be expected to cause some of his alleged symptoms. However, he found Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were "not entirely credible." Tr. 19. Because the ALJ did not expressly find Plaintiff to be a malingerer, his reasons for rejecting Plaintiff's testimony must be clear and convincing. *Hunter v. Astrue,* 874 F.Supp.2d 902, 912 (9th Cir. 2012). Plaintiff argues they are neither.

First, although he did not definitively find Plaintiff to be a malingerer, the ALJ noted "[m]ultiple treatment providers indicated that [Plaintiff's] behavior was indicative of false or exaggerated presentation, undermining the reliability of [Plaintiff's] allegations." Tr. 23. In late 2009, Dr. Edwin Hill, a psychologist, questioned the validity of Plaintiff's test results. He said "it was very doubtful that [Plaintiff] was putting forth his best efforts at all times." Tr. 819, 828.

Page 9 – ORDER

However, Dr. Hill refrained from labeling Plaintiff as a malingerer because Plaintiff did not complain much about his impairments which would be unusual for someone attempting to amplify his symptoms. Tr. 826-27. At a later appointment, Dr. Hill noted Plaintiff "put forth a good effort at all times." Tr. 805. "There was no evidence for feigned cognitive dysfunction or malingering." Tr. 809. In May 2010, Dr. Paul Nutter, an examining provider, noted inconsistencies between Plaintiff's apparent symptoms and what would be expected from his medical records. Tr. 713. Dr. Nutter opined such irregularities may indicate Plaintiff is attempting "to present himself as more disabled than possible." Tr. 713. However, the doctor qualified that "it is hard to tell with just one visit." Tr. 713. He also noted that many of Plaintiff's symptoms are not under his volitional control. Tr. 713. In June 2011, Dr. Larry Snodgrass, an examining provider, performed tests on Plaintiff. Tr. 1104. One of Plaintiff's scores was below the mean score for a severely brain-damaged individual. Tr. 1104. Dr. Snodgrass noted "[t]his performance indicates to me a rather poor effort and is more indicative of exaggerated symptoms." Tr. 1104. He concluded malingering was "probable." Tr. 1104.

Each of the providers discussed above articulated some uncertainty in his/her analysis of the legitimacy of Plaintiff's presentation. Based on this ambiguity, the ALJ rightly refrained from definitively labeling Plaintiff as a malingerer. This does not mean, however, that the ALJ could not consider the providers' comments in his credibility analysis. The Court finds the ALJ reasonably weighed the fact that multiple providers expressed concern that Plaintiff was exaggerating his condition against Plaintiff's credibility. *See Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012).

As additional reasons for discrediting Plaintiff, the ALJ found the "treatment record does not fully corroborate [Plaintiff's] testimony" and that Plaintiff's "claims of debilitated

Page 10 – ORDER

functioning are not consistent with contemporaneous reports of actual functioning." Tr. 19. The ALJ reasonably found Plaintiff's "dramatic improvements in numerous areas of functioning" to be inconsistent with his allegations of disability. Tr. 21, 809. After Plaintiff's condition oddly improved in late 2010, providers opined he might be able to return to work, albeit in a different capacity than his prior employment. Tr. 1142, 1161-64, 1281. Indeed, in 2011, Plaintiff reported that his former employer offered him a position in the sales department. Tr. 22, 1067. Plaintiff stated that he was considering accepting the position but would prefer to return to his prior position working with heavy equipment. Tr. 22, 1067. The ALJ did not err in weighing this evidence of improvement and employability against Plaintiff's credibility. *See Bowers*, 2012 WL 2401642, at *9.

### III.    The ALJ Reasonably Weighed the Medical Evidence.

When assessing an ALJ's treatment of medical evidence, the Ninth Circuit distinguishes between treating, examining, and non-examining physicians. In general, an ALJ must accord greater weight to a treating physician than a non-treating physician and to an examining physician than a non-examining physician. *Ghanim v. Colvin,* 763 F.3d 1154, 1160 (9th Cir. 2014). "If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (internal quotations omitted) (alterations in original). To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). If a treating or examining physician's opinion is contradicted by another physician's opinion, it may be rejected by specific and

legitimate reasons. *Id.* When evaluating conflicting opinions, an ALJ is not required to accept an opinion that is brief, conclusory, or unsupported by clinical findings. *Id.*

Here, both parties agree the provider opinions at issue were contradicted and thus the ALJ was obligated to satisfy the lesser "specific and legitimate" standard. Plaintiff argues the ALJ failed to meet it. In particular, Plaintiff asserts the ALJ cherry-picked portions of opinions that supported his finding of no disability and overlooked parts that suggested the opposite. An ALJ must consider all medical opinion evidence. 20 C.F.R. § 404.1527(b). While an ALJ is not bound by medical opinions on the ultimate question of disability, he must provide specific and legitimate reasons for rejecting them. *Tommasetti v. Astrue,* 533 F.3d 1035, 1041 (9th Cir. 2008). In *Tommasetti,* the Ninth Circuit explained that an ALJ "can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [his] interpretation thereof, and making findings." *Id.* (citing *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989)).

The ALJ complied with this standard. His decision includes a comprehensive discussion of the medical evidence and his analysis thereof. Moreover, the ALJ supplied specific and legitimate reasons, supported by substantial evidence, for assigning reduced weight to certain opinions. He reasonably assigned lesser weight to providers' opinions on topics outside of their specializations. Tr. 27; *McCawley v. Astrue,* 423 F.App'x 687, 689 (9th Cir. 2011). Because the ALJ properly discredited Plaintiff, it was appropriate for him to discount providers' opinions to the extent they were based on Plaintiff's self-reports. Tr. 27; *Tommasetti,* 533 F.3d at 1041 (An ALJ may reject a treating physician's opinion if it is largely based on self-reports of a claimant who has been properly discredited.). Moreover, the ALJ identified many inconsistencies within and between medical opinions. ALJs are responsible for sorting through ambiguities and

Page 12 – ORDER

resolving conflicts in medical testimony. *Magallanes*, 881 F.2d at 750. The ALJ acted reasonably in doing so. Plaintiff's case has confounded multiple health care providers. Dr. Sharon Underwood stated that she was left "scratching [her] head" regarding Plaintiff's ability to work after she "read all the available records from a multitude of sources." Tr. 332. Dr. Luther Frerichs concurred, saying "I have been more confused with [Plaintiff] than 99 percent of my patients." Tr. 332. Dr. Edwin Hill noted Plaintiff's pattern of errors in testing was "strange and difficult to understand." Tr. 820. The providers' medical opinions reflect that confusion. They are varied and, in places, contradictory. Far from cherry-picking medical evidence as Plaintiff alleges, the ALJ recognized these disparities, thoroughly reviewed the evidence before him, and set forth specific reasons for his weight assignments. Because relevant evidence adequately supports the ALJ's assessment of conflicting medical evidence, the Court will not engage in second-guessing. *Id.*

**IV.    The ALJ's RFC Assessment Adequately Addressed Plaintiff's Limitations.**

Plaintiff contends the ALJ's RFC assessment was erroneous because it did not include limitations addressing Plaintiff's learning disorder, headaches, or pain. The Ninth Circuit has held an RFC assessment adequately captures a claimant's restrictions if it is consistent with concrete limitations in the medical record. *Rogers v. Comm'r of Soc. Sec. Admin.*, 490 F.App'x 15, 18 (9th Cir. 2012). The ALJ need not prepare a function-by-function analysis of those limitations that the ALJ finds not credible or unsupported by the record. *Bayliss*, 427 F.3d at 1217.

Plaintiff notes that, while the ALJ found Plaintiff's learning disorder to be a severe impairment, he did not incorporate a credited doctor's opinions regarding Plaintiff's need for repetition into the RFC. Tr. 18, 25, 656. The Commissioner responds this limitation was

sufficiently addressed through the requirement that Plaintiff perform only "simple routine tasks[.]" Tr. 18. Recently, in *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015), the Ninth Circuit used the terms "simple, routine tasks" and "simple, repetitive tasks" interchangeably. It noted a claimant's limitations to "simple, routine tasks" was at odds with an ALJ's assessment of his reasoning abilities because "it may be difficult for a person limited to simple, repetitive tasks" to follow abstract instructions. *Id.* (emphasis added). The Court agrees with the Commissioner that the ALJ's restriction to "simple routine tasks" sufficiently addresses Plaintiff's learning difficulties documented on the record.

As for Plaintiff's headaches and pain, Plaintiff does not cite to evidence of physical limitations stemming from these impairments beyond those already listed in his RFC. Without more specific information on how these conditions hinder Plaintiff, the Court declines to find the ALJ failed to account for Plaintiff's limitations. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 n.2 (9th Cir. 2009) ("We reject any invitation to find that the ALJ failed to account for Valentine's injuries in some unspecified way."). In conclusion, the Court affirms the ALJ's RFC determination because it is supported by substantial evidence. *Bayliss*, 427 F.3d at 1217.

**V.   The ALJ Committed Harmless Error in his Hypotheticals to the Vocational Expert.**

Plaintiff argues the ALJ posed faulty hypotheticals to the Vocational Expert ("VE"), resulting in an inaccurate assessment of Plaintiff's employability. At step five, the Commissioner is responsible for determining whether a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). To satisfy this burden, the Commissioner may call a VE to testify regarding what jobs the claimant may do and the availability of those jobs in the national economy. *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). When posing a hypothetical question to a VE, the

ALJ must include all of the claimant's impairments. *Id.* "The ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record." *Id.*

At the hearing, the ALJ posed a hypothetical question to the VE that included the following limitation: "avoid even moderate exposure to hazards[.]" Tr. 62. In his decision, the ALJ altered the limitation to read: "avoid . . . even moderate exposure to hazards <u>such as machinery and heights</u>[.]" Tr. 18 (emphasis added). The Commissioner concedes this addition constitutes legal error because the VE did not consider these examples and thus found Plaintiff capable of performing jobs that involve the use of machinery: small products assembler and agricultural sorter. However, the Commissioner argues the error was harmless because the expert also found Plaintiff could work as a housekeeper/cleaner, which does not conflict with the limitation. Though it is only one job category, it includes thousands of jobs performable by Plaintiff within his state. The VE testified there are approximately 150,000 housekeeping positions nationally and 2,500 in the State of Washington. Tr. 63. Thus, the VE's uncontroverted opinion that Plaintiff could work as a housekeeper/cleaner constitutes substantial evidence that there are a significant number of positions in the economy that Plaintiff could fill. In light of this evidence, the Court finds the ALJ's error to be harmless. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (An ALJ's error is harmless where substantial evidence remains to support his ultimate conclusion).

## VI.    It is Not Clear Whether the ALJ Properly Evaluated Plaintiff's Eligibility for a Closed Period of Disability Benefits.

On May 26, 2011, the Commissioner awarded Plaintiff benefits for a closed period of time: from August 12, 2009 to April 22, 2011. Tr. 13, 87. However, in September 2011, the Commissioner reopened and revised it decision, finding Plaintiff not disabled for the entire period from August 12, 2009 through the date of the determination. Tr. 13, 87, 105-07. Plaintiff

Page 15 – ORDER

requested and received a hearing on October 4, 2011. The ALJ who presided over that hearing —
whose decision is the basis of the present appeal — concluded Plaintiff was not disabled from
August 12, 2009 though the date of the decision.

Plaintiff argues the ALJ failed to evaluate his eligibility for benefits during the previously
recognized closed window of time. Under 20 C.F.R. §§ 404.316 and 404.1594, the
Commissioner may award disability benefits on a continuing basis or for a finite period. Here, it
is not clear whether the ALJ considered both options. Several discrepancies confuse the record.
At the hearing, the ALJ recognized the closed period as though it were still in effect and
confirmed with Plaintiff that he had "appealed solely the unrecognized part." Tr. 41. There is no
mention of the fact that the Commissioner had already revised that decision. Moreover, at the
hearing, the ALJ noted Plaintiff had been arguably disabled for a closed period. He commented
that Plaintiff "had severe symptoms after [his] injury, but they started going away and by
February of 2011, at least, [Plaintiff was] able to return to work." Tr. 48. Plaintiff's medical
records support this comment. It appears that Plaintiff's impairments were most severe during
the time between his initial injury and the later "pop" in his head. However, the ALJ's written
decision does not include any analysis focused on this possible window of qualifying time.

The Commissioner now theorizes that the ALJ may have declined to award benefits for a
closed period because of Plaintiff's possible malingering. However, this Court's review is
confined to reasons provided by the ALJ in the disability determination. It "may not affirm the
ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).

/ / /

/ / /

In the absence of any documented discussion of the issue, the Court cannot verify whether it was properly considered. Remand is appropriate.

## ORDER

Based on the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is REVERSED and the matter is REMANDED for further administrative proceedings. The ALJ should determine whether Plaintiff is entitled to a closed period of disability.

DATED this ____30____ day of July 2015.

_____
MARK D. CLARKE
United States Magistrate Judge